# EXHIBIT A



INSIGHT. ABILITY. EXECUTION.

2211 Michelson Drive
Suite 1110
Irvine, CA 92612

Toll Free: 800.303.4006
www.cgcommercial.com
info@cgcommercial.com

November 7, 2014

Mr. Anthony Vcelka
Murray Energy Corporation
46226 National Road
St. Clairsville, OH 43950

Re:     The Monongalia County Coal Company and Murray Energy Corporation as Co-Lessees ("Lessee")
        Lease Agreement No. CG-5687
        Lease Schedule No. 1

Dear Mr. Vcelka:

Enclosed for your review and execution by an authorized signer, please find the following documents in regards to the above referenced Lease.

- Lease Agreement No. CG-5687;
- Lease Schedule No. 1;
- Exhibit "A";
- Delivery, Acceptance & Payment Authorization Certificate;
- Notice and Acknowledgment of Assignment;
- Insurance Requirements Form;
- Pay Proceeds Letter; and
- Estoppel letter.

In addition, please make the following arrangements at your earliest convenience:

1) Please have your insurance company forward the required Insurance Certificate(s) to the attention of Debra Variano. The Certificate(s) should reflect both liability and personal property damage as on the enclosed Insurance Information form.
2) Please provide the following:
    a) A completed W9 Form for The Monongalia County Coal Company.
    b) A tax Exemption Certificate for The Monongalia County Coal Company, if applicable.
    c) A copy of your canceled check or wire for the deposit paid to JH Fletcher.
3) We will conduct a brief physical inspection of the Equipment. Please provide contact information for making appointment arrangements at the Equipment location (Brave, PA).

Thank you for selecting CG Commercial Finance for your leasing requirements. Should you have any questions, please do not hesitate to call me at 800-303-4006 ext. 362.

Sincerely,
**CG Commercial Finance**

Robert C. Davis
Executive Vice President

Exhibit A - Page 15



# LEASE AGREEMENT

No. CG-5687

| 2211 Michelson Drive, Suite 1110, Irvine, CA 92612 | | Voice (949) 720-9511    Facsimile (949) 720-9611 | | | |
|---|---|---|---|---|---|
| **LESSEE** | | | | | |
| The Monongalia County Coal Company and Murray Energy Corporation as Co-Lessees   ("Lessee") | | | | | Page 1 of 4 |
| **STREET** | **CITY** | **COUNTY** | | **STATE** | **ZIP** |
| 46226 National Road | St. Clairsville | Belmont | | OH | 43950 |

1.    **Agreement & Lease:** Consultants Group Commercial Funding Corporation doing business as CG Commercial Finance and as Passchendaele Capital Fund ("CGCF") agrees to lease to Lessee, and Lessee agrees to lease from CGCF, the personal property described in each Lease Schedule(s) ("Schedule(s)") executed from time to time in accordance with this Lease Agreement ("Agreement"), together with all replacement parts, additions, repairs, accessions, attachments and accessories now or hereafter made a part thereof (collectively, the "Equipment"). Each Schedule shall incorporate all of the terms and conditions of this Agreement and such other terms and conditions as the parties shall agree upon. Each Schedule shall constitute a complete and separate lease agreement, independent of all other Schedules. In the event of a conflict between the provisions of this Agreement and the provisions of any Schedule, the provisions of the Schedule shall prevail. The term "Lease" when used herein shall mean each Schedule and, solely to the extent incorporated therein by reference, this Agreement. The Lease is in force and is binding upon Lessee and CGCF upon signed acceptance by CGCF.

2.    **Uniform Commercial Code:** Lessee agrees and acknowledges that the term "Finance Lease" as used in this Lease has the meanings ascribed to it under Division 10 of the California Uniform Commercial Code (and has no effect on any tax or accounting treatment of the Lease) and this Lease shall be considered a "finance lease". By executing the Lease, Lessee agrees that either: (i) Lessee has received a copy of the contract by which CGCF acquired the Equipment, or (ii) that CGCF has informed Lessee of the identity of the Supplier, that Lessee is entitled to the promises and warranties provided by the Supplier to CGCF, and that Lessee may contact the Supplier for a description of those promises and warranties. This provision survives termination of the Lease.

3.    **No Warranties/Manufacturer's Warranties:**  CGCF, not being the manufacturer, publisher, distributor, licensor or supplier ("Supplier(s)") of the Equipment, nor Supplier's agent, MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, QUALITY, DESIGN, CONDITION, CAPACITY, SUITABILITY, MERCHANTABILITY OR PERFORMANCE OF THE EQUIPMENT OR OF THE MATERIAL OR WORKMANSHIP THEREOF, IT BEING AGREED THAT THE EQUIPMENT IS LEASED "AS IS" AND THAT ALL SUCH RISKS, AS BETWEEN CGCF AND LESSEE, ARE TO BE BORNE BY LESSEE AT ITS SOLE RISK AND EXPENSE. Lessee accordingly agrees not to assert any claim whatsoever against CGCF based thereon. Lessee further agrees, regardless of cause, not to assert any claim whatsoever against CGCF for loss of anticipatory profits or consequential damages. CGCF shall have no obligation to install, erect, test, adjust or service the Equipment. Lessee shall look to the Supplier for any claims related to the Equipment. Provided that no Event of Default (as defined below) shall have occurred and be continuing, Lessee shall be entitled to the benefit of any applicable Supplier's warranties and such warranties are hereby assigned by CGCF to Lessee, to the extent assignable.

4.    **Supplier Not an Agent:**  Lessee further understands and agrees that neither the Supplier, nor any sales representative or agent of the Supplier, is an agent of CGCF. Sales representatives of the Supplier, and persons not employed by CGCF (including, without limitation, brokers) are not authorized to waive or alter any term or condition of the Lease. No representation as to the Equipment by the Supplier or by any other person not employed by CGCF shall in any way bind CGCF or affect Lessee's obligations under the Lease.

5.    **Performance of Lessee's Obligations by CGCF:**  If Lessee shall fail duly and promptly to perform any of its obligations under the Lease, CGCF may after five (5) business days, at its option, perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense (including reasonable attorneys' fees), penalty or other liability incurred by CGCF in such performance, together with interest at the rate of 1 1/2% per month thereon (but in no event greater than the highest rate permitted by applicable law) until paid by Lessee to CGCF, shall be payable by Lessee upon demand as additional rent for the Equipment. Lessee shall be responsible for and pay to CGCF for all other related costs and expenses incurred by CGCF.

6.    **Further Assurances and Notices:** Lessee's signing of this Lease constitutes a firm offer. In consideration of CGCF's time and effort in reviewing and acting on the offer, Lessee agrees that its offer is irrevocable for thirty business days after CGCF's receipt of the offer and of all credit information requested by CGCF. Thereafter, this offer shall expire five business days after CGCF's receipt of Lessee's written notice to revoke the offer. CGCF's signing of the Lease and Lease Schedule, or written approval provided to Lessee, constitutes acceptance of Lessee's offer. CGCF may accept all or part of the Equipment offered by Lessee in this Lease. Upon acceptance by CGCF as above provided, the Deposit, if any, indicated on the Lease Schedule shall be fully earned by CGCF and shall not, in whole or in part, be either applied to rentals accruing upon such Lease Schedule (unless otherwise specified in such Lease Schedule) or be returned or refunded to the Lessee. Lessee agrees to sign and provide any documents which CGCF reasonably deems necessary for confirmation, assignment and assurance of performance by Lessee of its obligations under the Lease or for perfection of this Lease and the Equipment. Lessee acknowledges CGCF's right to file Uniform Commercial Code (UCC) Financing Statements on Lessee for the Lease and Equipment. UCC filing and lien search fees, physical inspection fees and all other transaction costs will be the Lessee's sole responsibility. Lessee authorizes CGCF to insert applicable dates as well as such information as serial numbers as necessary to complete all documentation for the Lease. If required by CGCF, Lessee agrees to ACH payment processing that is initiated by Lessee. Prior to CGCF's acceptance of the Lease and for the duration of the Lease, Lessee agrees to promptly provide CGCF with all credit information requested by CGCF including, but not limited to, Murray Energy Corporation's comparative audited financial statements for the most current annual reporting period and comparative un-audited financial statements for the most current quarterly reporting periods. Lessee's failure to provide such information to CGCF is an event of default under the Lease. **All notices to Lessee shall be in writing and shall be delivered by mail at its address shown herein or to such other address as directed by Lessee.** After acceptance by CGCF of this Lease and before funding and commencement of each and every Lease Schedule to this Lease, the occurrence of a material adverse change in the financial condition (as reasonably determined by CGCF) or the occurrence of any event of default as defined herein shall, at the option of CGCF, permit CGCF to revoke its acceptance of this Lease or any Lease Schedule hereunder. If said acceptance is revoked as to the Lease, as a whole, or as to any Lease Schedule, then the Deposit, if any, indicated in the Lease Schedule as to which acceptance has been revoked, shall be deemed fully earned by CGCF and such Deposit shall not, in whole or in part, be returned or refunded to Lessee. **All notices to CGCF shall be sent certified mail, return receipt requested, to CGCF at its address shown herein or to such other address as directed by CGCF.**

_____ _____
Initials    Initials

Exhibit A - Page 16

**CG COMMERCIAL FINANCE**                                              LEASE AGREEMENT No. CG-5687
2211 Michelson Drive, Suite 1110, Irvine, CA 92612
Voice  (949) 720-9511  *  Facsimile  (949) 720-9611                                            Page 2 of 4

7.   **Lessee's Representations and Warranties:** Lessee represents and warrants, as of the date of the Lease, that (i) Lessee is duly organized, validly existing and in good standing under the laws of the state of its incorporation or organization, and is qualified to do business where necessary to carry on its business and operations and own its property, (ii) the Lease has been duly authorized, executed and delivered by Lessee and constitutes the valid, legal and binding obligation of Lessee, enforceable in accordance with its terms, and (iii) the execution, delivery and performance by Lessee of its obligations under the Lease will not violate any judgment, order, law or governmental regulation applicable to Lessee or any provision of Lessee's articles of incorporation, by-laws or other organizational documents or result in any breach of or constitute a default under any instrument or agreement to which Lessee is a party or by which Lessee or its assets may be bound.

8.   **Rent & Lease Duration:** As to any Equipment leased hereunder, the rent payable by Lessee to CGCF shall be as set forth in the applicable Schedule. A Schedule commences and rent is due beginning on the date that Lessee certifies in writing to CGCF that all of the Equipment has been completely received, installed, tested and accepted as satisfactory by Lessee, and Lessee authorizes CGCF in writing to disburse payment to the Supplier ("Acceptance Date"). The Initial Period of each Schedule is reflected on each Schedule and begins on the first day of the month following the Acceptance Date. A calendar quarter begins on the first day of January, April, July and October. The monthly rent is due to CGCF, in advance, for each month or portion of a month beginning on the Acceptance Date and continuing for each month that this Lease is in effect. If the Acceptance Date does not fall on the first day of a calendar month, then the first rental payment shall be calculated by multiplying the number of days beginning on the Acceptance Date through the last day of the month by a daily rental equal to one-thirtieth of the Rent. The Index Rate shall be the swap rate as published in the Federal Reserve Board Statistical Release equally maturing with the Initial Period. CGCF at its sole discretion may adjust the Initial Period (by up to 12 months and in no event less than 33 months) and/or the Deposit (not to exceed two time the amount on the Schedule) while maintaining the implicit rate herein and accordingly adjust the Schedule Initial Period, MELRF, Rent, Deposit, Early Purchase Option and any minimum and maximum payment as provided in Option (2). Lessee shall pay all rents hereunder to CGCF, its successors or assigns, at CGCF's address set forth above (or as otherwise directed in writing by CGCF, its successors or assigns), whether or not Lessee has received any notice that such payment is due (which shall not release CGCF of its invoicing responsibilities). **LESSEE SHALL NOT ABATE, SET OFF, OR DEDUCT ANY AMOUNT OR DAMAGES FROM OR REDUCE ANY RENT OR OTHER ITEMS PAYABLE UNDER THE LEASE FOR ANY REASON WITHOUT THE PRIOR WRITTEN CONSENT OF CGCF, ITS SUCCESSORS OR ASSIGNS.** Late charges on any past due payments, taxes or other charges hereunder shall accrue at the rate of $.025 per dollar (2.5%) per month of the unpaid amount (or if such rate shall exceed the maximum rate allowed by law, then at the highest rate that is permitted to be charged on liquidated amounts after judgment) beginning with the date that such amount was due and continuing until the amount is paid. If late charges are assessed by CGCF's successors or assigns due to any late payment, Lessee agrees to pay such late charges or if applicable, to reimburse CGCF for their payment made on behalf of Lessee to CGCF's successors or assigns. Lessee agrees to make payment for any late charges promptly upon demand by CGCF. Lessee and CGCF mutually agree that the Lease extends for a period of twelve months at the rental rate delineated on the Schedule unless Lessee provides to CGCF written notice of Lessee's election not to extend the Lease past the Initial Period at least five months and not greater than twelve months prior to the expiration of the Initial Period.

9.   **Return of Equipment Option:** Unless otherwise provided in writing and made part of the Lease, Lessee may return all but not less than all of the Equipment pursuant to the terms and conditions herein and subject to any Schedule as of the expiration of the Initial Period or any extension period as agreed to by Lessee and CGCF, provided Lessee is not in default hereunder and has provided notice to CGCF as specified in the Lease Agreement. If Lessee elects to return the Equipment as provided for in the Lease ("Return of Equipment Option"), Lessee will discontinue the use of the Equipment and immediately, at its own expense, ship the Equipment with all manuals, and cables as originally furnished by Supplier, to a location within the continental United States in accordance with the Equipment return instructions provided by CGCF. Lessee agrees that the Equipment, when returned, shall be in the same condition as when delivered to Lessee, reasonable wear and tear excepted, and as further set forth in the Schedule, and shall be eligible for the manufacturer's or vendor's standard maintenance contract without the need for repair or rehabilitation. Lessee agrees that Lessee will, upon the request of CGCF, store the Equipment on Lessee's premises, at a safe location acceptable to CGCF that is protected from the weather and elements and in accordance with the manufacturer's recommendations, without charge to CGCF for a period of 90 days following the expiration or earlier termination of a Schedule. During such storage period Lessee shall not use the Equipment for any purpose. Upon the expiration of the storage period Lessee will return the Equipment to CGCF in accordance with this paragraph. Until Lessee has complied with all of the requirements of this Section, Rent payment obligations will continue at the original Initial Period rental rate as delineated on the Schedule and payable on a quarterly basis.

10.  **Additions & Modifications to the Equipment:** Unless CGCF shall otherwise agree in writing, all upgrades, modifications, alterations or additions (collectively "Additions & Modifications") to the Equipment at any time during the Lease, become a part of the Equipment and are owned by CGCF. Lessee shall provide prompt notice to CGCF for all Additions & Modifications to the Equipment provided that such Additions and Modifications to the Equipment do not adversely affect the operation or reduce the value of the Equipment, otherwise Lessee shall obtain prior written consent from CGCF. All Additions & Modifications to the Equipment must be free and clear of any liens or rights of other parties.

11.  **Default:** Lessee shall promptly notify CGCF of the occurrence of any Event of Default. An Event of Default shall occur if: (a) Lessee fails to pay when due any installment of rent or any other sum owed by Lessee under the Lease and such failure continues for a period of ten (10) days; (b) Lessee fails to perform or observe any covenant, condition or agreement to be performed or observed by it under the Lease and such failure continues uncured for ten (10) days after written notice thereof to Lessee by CGCF; (c) Lessee ceases doing business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is adjudicated a bankrupt or an insolvent, files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation or files an answer admitting the material allegations of a petition filed against it in any such proceeding, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of it or of all or any substantial part of its assets or properties, or if it or its shareholders shall take any action looking to its dissolution or liquidation; (d) within sixty (60) days after the commencement of any proceedings against Lessee seeking reorganization, arrangement, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have been dismissed, or within sixty (60) days after the appointment without Lessee's consent or acquiescence of any trustee, receiver or liquidator of it or of all or any substantial part of its assets and properties, such appointment shall not be vacated; (e) Lessee attempts to remove, sell, transfer, encumber, part with possession or sublease the Equipment or any item thereof (without CGCF's prior written consent); (f) Lessee defaults in payment or performance of any obligation or indebtedness of any kind or description, whether direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising with CGCF or in the case of any other lender or lessor to Lessee where the payment obligations exceed $30,000,000.00; or (g) Any warranty, representation or statement made or furnished to CGCF by or on behalf of Lessee in or in connection with the Lease proves to have been false in any material respect when made or furnished; or (h) Lessee or Guarantor undergoes a sale, buyout, or Change-in-Control which results in a material deterioration in Lessee's credit worthiness as judged solely and reasonably by CGCF. A Change-in-Control means a transaction or series of related transactions which, giving effect thereto, causes the holders of ownership interests in the Lessee or Guarantor prior to such transaction or transactions to beneficially own less than 51% of Lessee or Guarantor after such transaction or transactions have been consummated.

Initials         Initials

CG COMMERCIAL FINANCE

LEASE AGREEMENT No. CG-5687

2211 Michelson Drive, Suite 1110, Irvine, CA 92612
Voice (949) 720-9511 * Facsimile (949) 720-9611

Page 3 of 4

12. **Remedies:** Upon the occurrence of an Event of Default, CGCF shall have all the rights and remedies provided by applicable law and by this Lease. Notwithstanding that this Agreement is a lease and title to the Equipment is at all times in CGCF, CGCF may at its option, choose those rights and remedies of a secured party under the Uniform Commercial Code. In addition, CGCF, at its option, may: (a) by notice to Lessee cancel the Lease effective on the date such Event of Default first occurred; (b) proceed by appropriate court action or actions or other proceedings either at law or equity to enforce performance by the Lessee of any and all covenants of the Lease and to recover damages for the breach thereof; (c) CGCF and/or its agents may without notice or liability or legal process, enter into any premises of or under the control or jurisdiction of Lessee or any agent of Lessee where the Equipment may be or by CGCF is believed to be, and repossess all or any item thereof, disconnecting and separating all thereof from any other property and using all force necessary or permitted by applicable law so to do, Lessee hereby expressly waiving all further rights to possession of the Equipment and all claims for injuries suffered through or loss caused by such repossession or demand that Lessee deliver the Equipment forthwith to CGCF at Lessee's expense at such place as CGCF may designate (CGCF and Lessee shall cooperate in good faith to coordinate the repossession of underground Equipment in a manner consistent with mine safety and applicable law); (d) elect to sell, re-lease or otherwise dispose of all or part of the Equipment or to retain all or part thereof, in such manner and on such terms and conditions as CGCF may determine in its sole discretion, with or without notice to Lessee which Lessee hereby waives to the extent permitted by applicable law; and (e) declare immediately due and payable any unpaid rent, late charges and any other amounts due hereunder that accrued on or before the occurrence of the Event of Default, plus as liquidated damages for loss of the bargain and not as a penalty, an amount equal to the Stipulated Value for the Equipment as of the rent payment date immediately preceding the date CGCF declares the Lease in default, and, in addition, all attorney and court costs incurred by CGCF relating to the enforcement of its rights under the Lease. CGCF may sell the equipment at private or public sale, in bulk or in parcels, with or without notice, without having the Equipment present at the place of sale; or CGCF may lease, otherwise dispose of or keep idle all or part of the Equipment, and CGCF may use Lessee's premises for any or all of the foregoing. CGCF may sell or lease the Equipment at a time and location of its choosing provided that CGCF acts in good faith and in a commercially reasonable manner. The proceeds of sale, lease or other disposition, if any, of the Equipment shall be applied (i) to all CGCF's reasonable costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of the Equipment including attorney fees, then (ii) to the extent not previously paid by Lessee, to pay CGCF the Stipulated Value of the Equipment plus any accrued and unpaid rent, late charges, indemnities and any other amounts then remaining unpaid under the Lease, then (iii) to reimburse to Lessee any such sums previously paid by Lessee as liquidated damages. CGCF shall retain any surplus. In no event shall Lessee upon demand by CGCF for payment hereunder or otherwise be obligated to pay any amount in excess of that permitted by law. The waiver by CGCF of any breach of any obligation of Lessee shall not be deemed a waiver of any future breach of the same or any other obligation. No remedy of CGCF hereunder shall be exclusive of any remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy. Lessee shall remain liable for any deficiency remaining should CGCF sell or otherwise dispose of the Equipment.

13. **Attorneys' Fees and Jury Waiver:** **In the event of any proceeding involving the interpretation or enforcement of the Lease and any related documents or any dispute related thereto or to the relationship between the parties, the prevailing party shall be paid expenses and reasonable attorneys' fees, including any incurred before and at trial, on appeal, in any other proceedings or without any litigation being filed.** CGCF AND LESSEE IRREVOCABLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE.

14. **Indemnity:** Lessee agrees that CGCF shall not be liable to Lessee for, and Lessee shall indemnify and save CGCF harmless from and against any and all liability, loss, damage, expense, causes of action, suits, claims or judgments arising from or caused directly or indirectly by: (a) Lessee's failure to promptly perform any of its obligations under the provisions of the Lease; or (b) injury to persons or damage to property resulting from or based upon actual or alleged use, operation, delivery or transportation of any or all of the Equipment or its location or condition; or (c) inadequacy of the Equipment, or any part thereof, for any purpose or any deficiency or defect therein or the use or maintenance thereof or any repairs, servicing or adjustments thereto or any delay in providing or failure to provide any part or service thereof or any interruption or loss of service or use thereof or any loss of business; and shall, at its own cost and expense, defend any and all suits which may be brought against CGCF, either alone or in conjunction with others upon any such liability or claim(s) and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against CGCF in any such action or actions, provided, however, that CGCF shall give Lessee written notice of any such claim or demand. Lessee agrees that its obligations under this paragraph shall survive the termination of the Lease.

15. **Assignment:** The Lease and all rights of CGCF thereunder shall be assignable by CGCF with prompt written notice to Lessee, except that the Lease may not be assigned to Varilease Finance, Inc. or affiliates thereof, but Lessee shall not be obligated to any assignee of CGCF except after written notice of such assignment from CGCF. Following such assignment (i) solely for the purpose of determining assignee's rights under the Lease, the term "CGCF" shall be deemed to include or refer to CGCF's assignee, (ii) such assignee shall have all the rights and benefits of CGCF under the Lease, but none of CGCF's obligations (except as expressly agreed in writing), (iii) Lessee shall make all payments as directed by such assignee, (iv) Lessee shall provide CGCF with a copy of any notices sent by Lessee to Assignee regarding the Lease; and (v) Lessee agrees that it will not assert against any assignee any claim, defense, counterclaim or offset that Lessee may have against CGCF. Without the prior written consent of CGCF, which shall not be unreasonably withheld, Lessee shall not assign, sell or transfer the Lease or its interests thereunder, in any manner including but not limited to, an assignment due to sale, merger, liquidation, sub-lease, change of ownership or change-in-control, with respect to the Equipment covered thereby.


Initials


Initials

Exhibit A - Page 18

**CG COMMERCIAL FINANCE**
2211 Michelson Drive, Suite 1110, Irvine, CA 92612
Voice  (949) 720-9511  *  Facsimile  (949) 720-9611

16.  **Miscellaneous:**  If any provision of the Lease is contrary to, prohibited by or deemed invalid under applicable laws or regulations of any jurisdiction, such provision shall be inapplicable and deemed omitted but shall not invalidate the remaining provisions of the Lease.  In the event the Lease or any part thereof is deemed to be a lease creating a security interest, Lessee grants CGCF a security interest in each item of Equipment as security for all of Lessee's indebtedness and obligations owing under the Lease, as well as all other present and future indebtedness and obligations of Lessee to CGCF of every kind and nature whatsoever.  All agreements, representations and warranties contained in this Lease, or in any document or certificate delivered pursuant to or in connection with this Lease, shall expressly survive the termination of this Lease.  This Lease shall be governed by and construed in accordance with, the laws of the State of California, without giving effect to the principles of conflicts of laws.  This Lease is entered into and is to be performed in the County of Orange in the State of California.  Lessee submits and consents to the exclusive jurisdiction of any causes of action arising directly or indirectly from the Lease in any federal or state court located in the State of California.  Time is of the essence with regard to each provision of this Lease.

Each Schedule shall constitute a new Lease and the obligation of Lessee to pay rent and any other sums due under the Lease shall be absolute and unconditional.  This Lease Agreement and any Schedule cannot be terminated or canceled for any reason except as expressly provided herein.  To the extent permitted by applicable law, Lessee hereby waives the following rights and remedies conferred on the Lessee by Law:  (1) right to unilaterally terminate or cancel this Lease; (2) right to reject the Equipment after Lessee has provided written acceptance of the Equipment; (3) right to revoke written acceptance of the Equipment; (4) right to recover any general, specific, incidental and consequential damages or recover damages from any CGCF breach of warranty; (5) right to specific performance, replevin, detinue, sequestration, claim and delivery of the like for the Equipment subject to this Lease.  To the extent permitted by applicable law, Lessee also waives any rights which may require CGCF to sell, lease or otherwise use any Equipment in mitigation of CGCF's damages as set forth in Section 12.

The Lease contains the entire agreement between the parties with respect to the Equipment and may not be altered, modified, terminated or discharged except by a writing signed by the party against whom such alteration, modification, termination or discharge is sought.  This Lease once accepted by CGCF shall be binding upon and inure to the benefit of CGCF, Lessee and their permitted successors and assigns.  Lessee and CGCF agree that no oral or other written agreements, or promises shall be relied upon or be binding on the parties unless made part of the Lease by written authorization provided by authorized signers of both the Lessee and CGCF.

LESSEE/OFFEROR

OFFEROR: The Monongalia County Coal Company

Signature: _____

Name: _____Robert D. Moore_____

Title: _____Vice President_____

Date: _____11-7-14_____

OFFEROR: Murray Energy Corporation

Signature: _____

Name: _____Robert D. Moore_____

Title: _____Executive VP, C.O.O., and C.F.O._____

Date: _____11-7-14_____

CG COMMERCIAL FINANCE

ACCEPTANCE:

Signature: _____

Name: _____Robert C. Davis_____

Title: _____Executive Vice President_____

Date: _____11-7-14_____

Exhibit A - Page 19



# LEASE
# SCHEDULE No. 1

Page 1 of 4

2211 Michelson Drive, Suite 1110, Irvine, CA 92612  Voice  (949) 720-9511    Facsimile  (949) 720-9611

| Lessee  The Monongalia County Coal Company and Murray Energy Corporation as Co-Lessees ("Lessee") | Lease Agreement No.  CG-5687 Phone No.    (216) 765-1240 |
|---|---|

| STREET | CITY | COUNTY | STATE | ZIP |
|---|---|---|---|---|
| 46226 National Road | St. Clairsville | Belmont | OH | 43950 |

This Schedule is issued with respect to the **Lease Agreement No. CG-5687** Dated __11-7-14__
All of the terms of the Lease Agreement are incorporated into this Schedule as if fully reflected on the Schedule. The terms of this Schedule and the Lease Agreement combine to form an individual Lease with an independent Initial Period.

Initial Period (months): ____36____

Rent:    $34,011.68

Payment Frequency: _____Monthly_____

Equipment Cost:  __$1,298,056.80__

Deposit: $34,011.68*

Monthly Equivalent Lease Rate Factor (MELRF): _0.026202_

Equipment Description: Mining equipment as more fully described on Exhibit "A" attached hereto.

*Upon execution of this Schedule, one-half percent of the Equipment Cost is due, and the remaining balance of the Deposit related to a Schedule is due the day of funding of that Schedule. On the day of funding, 48% of the Deposit will be applied to the first Initial Period Rent and 52% will be earned by CGCF as a transaction fee. Upon payment by Lessee, the Deposit is non-refundable and deemed fully earned.

Equipment accepted by CGCF may be documented on more than one Schedule. Each Lease will contain Murray Energy Corporation and other Murray Energy Corporation subsidiaries as Co-Lessees determined by CGCF and Lessee and shall contain the same terms and conditions as provided for in this Schedule and related Agreement.

For purposes of the Lease Agreement, any related Schedules and associated documents, all Co-Lessees ("Lessee") agree that each will be jointly and severally liable for the performance of all obligations and bound to all terms and conditions as Lessee which will include but not be limited to the payment of Rent, and any other amounts which are now due or will become due and payable pursuant to the terms hereof. For purposes hereof, the term "Lessee" wherever it appears will refer to all Co-Lessees, unless otherwise noted or agreed to by the parties. The Co-Lessees further agree that any authorized signature of any Co-Lessee is authorized to bind all Co-Lessees with respect to this Lease Agreement. Any notice required under this Lease Agreement which is received by Lessor from any Lessee as a Co-Lessee will be deemed to have been received by all Co-Lessees.

Any Deposit under this Schedule shall be returned to Lessee (without interest thereon) if CGCF does not accept this Schedule. In the event that CGCF accepts this schedule, and Lessee does not fulfill its commitment with respect to completion of the terms and conditions of the Lease including the agreed upon Equipment Cost (which may be increased by as much as 10% and reduced by as much as 20%) by January 31, 2015, then the Deposit will be considered an earned processing fee by CGCF. The actual Rent amount will be determined by multiplying the MELRF by the actual Equipment Cost. At the time of the Acceptance Date (or until such time as all final Lease related documentation is received by CGCF or CGCF's assigns) CGCF may adjust the MELRF upward in direct relation to any movement in the Index Rate. The Base Rate to be used for comparison purposes shall be 1.2%.

Schedule Options:  At the expiration of the Initial Period or if extended, at the expiration of the extension period and in accordance with the terms and conditions of the Lease, Lessee shall have the option to:

Option (1)    Extend the Schedule for a period of twelve additional months at the rental rate delineated herein.

Option (2)    Purchase all, but not less than all, of the Equipment for its then Fair Market Value ("FMV") purchase price as agreed to by Lessee and CGCF of not less than 20.0% and not greater than 29.0% of the Equipment Cost, plus all applicable sales/use taxes thereon and all accrued but unpaid interest, taxes, penalties and other sums due under the Lease. Upon receipt of the agreed upon amount, CGCF shall transfer to Lessee any and all rights, title and interest in the subject Equipment, as is, where is, without any warranties express or implied. In the event Lessee and CGCF cannot agree on FMV, then the FMV shall be determined by the average of two appraisals. Lessee shall pay the cost of such appraisals. One appraiser will be chosen by Lessee and one appraiser will be chosen by CGCF, both of which shall be associated with a nationally recognized appraisal association, and are independent with respect to Lessee and CGCF, instructed to determine the FMV of the Equipment based upon the price that would be obtained in an arm's length, retail transaction between informed and willing parties, under no compulsion to buy or sell, including taxes, transportation, installation and any other services required to render such Equipment fully acceptable for use by an end user. If Lessee has not elected any option available in the Lease two months prior to the end of any extension period, then Option (1) shall prevail.

Option (3)    Lessee shall return all Equipment, pursuant to Section 9 of the Lease Agreement.


Initials


Initials

Exhibit A - Page 20

**CG COMMERCIAL FINANCE**
2211 Michelson Drive, Suite 1110, Irvine, CA 92612

**LEASE SCHEDULE No. 1**  Page 2 of 4
Voice  (949) 720-9511  *  Facsimile  (949) 720-9611

By signing below, the signer certifies that he or she has read this Schedule including pages 1-4 and the Lease Agreement, has had an opportunity to discuss its terms with CGCF, and is authorized to sign on behalf of Lessee.

| LESSEE/OFFEROR | CG COMMERCIAL FINANCE |
|---|---|
| OFFEROR: The Monongalia County Coal Company | ACCEPTANCE: |
| Signature: | Signature: |
| Name:    Robert D. Moore | Name:    Robert C. Davis |
| Title:    Vice President | Title:    Executive Vice President |
| Date:    11-7-14 | Date:    11-7-14 |

OFFEROR: Murray Energy Corporation

Signature:

Name:    Robert D. Moore

Title:    Executive VP, C.O.O., and C.F.O.

Date:    11-7-14

Exhibit A - Page 21

**CG COMMERCIAL FINANCE**
2211 Michelson Drive, Suite 1110, Irvine, CA 92612

A.   Insuring the Equipment:  Throughout the duration of the Lease including while the Equipment is in the possession of Lessee or a third party, Lessee at its own expense shall maintain (i) comprehensive public liability insurance (naming CGCF or its assigns as additional insured) for bodily injury and property damage resulting from the maintenance, use or transport of the Equipment and (ii) property and casualty insurance (naming CGCF and/or its assigns as sole loss payee) covering all risks of loss or damage to the Equipment from any cause whatsoever including, without limitation, property damage, liability, fire, theft, vandalism, malicious mischief and all other risks.  All insurance will be from an insurer(s) and in a form and amount reasonably satisfactory to CGCF in form standard within the industry.  Lessee shall deliver to CGCF the certificates of such insurance (and each renewal or replacement thereof).  All policies will provide that no cancellation or material modification of such insurance shall be effective without thirty days prior written notice to CGCF.  If the policy is not in compliance with the requirements of the Lease, Lessee authorizes CGCF to order said coverage (at Lessee's expense) from Lessee's insurance agent or insurance company.  If Lessee fails to obtain such coverage, CGCF may place coverage at Lessee's expense.  CGCF is, however, not obligated to place such insurance and any loss incurred during any period in which coverage is not in place shall be borne by Lessee.  CGCF may, at its own expense, for its own benefit, purchase insurance in excess of that required under this Lease.

B.   Risk of Loss to the Equipment:  Throughout the duration of the Lease including while the Equipment is in the possession of Lessee or a third party, Lessee agrees to assume the entire risk of any partial or complete loss with respect to the Equipment from any cause whatsoever including theft, loss, damage, destruction or governmental taking, whether or not such loss is covered by insurance.  Lessee agrees to give CGCF immediate notice of any damage to or loss of any Equipment.  All physical damage insurance proceeds shall be payable directly to CGCF (and shall either be retained by CGCF in the event of payoff due to payoff of Lessee's respective Lease payment obligations or reimbursed to Lessee for repairs to Equipment that is retained in Lease).  If any of the Equipment is lost, destroyed, damaged beyond repair, or taken by governmental action, on the next succeeding rental payment date, Lessee will (1) at Lessee's sole expense (and utilizing any insurance proceeds available), either replace the Equipment with like-kind Equipment, free and clear of any liens or rights of other parties, acceptable to CGCF or CGCF's assignee and continue to pay all rentals without interruption as they come due, or (2) pay to CGCF all past due rentals and other amounts then late or due and an amount equal to the stipulated value ("Stipulated Value").  The Stipulated Value will start at 110% of the Equipment Cost and decline by 2.0% per month during the Initial Period and will not decline any further after the expiration of the Initial Period.  Following payment of any Stipulated Value, and if no Event of Default has occurred and remains continuing, CGCF will then: (a) transfer to Lessee CGCF's rights to such Equipment "as is", "where is" and with all defects, without recourse and without representation or warranty, express or implied, other than a warranty that the Equipment is free and clear of any liens created by CGCF; and (b) remit to Lessee any physical damage insurance proceeds arising out of such loss up to the amount of the Stipulated Value paid.  CGCF shall determine in the exercise of its reasonable judgment and with consultation with Lessee whether the Equipment is damaged beyond repair.  In the event of damage or loss, which does not result in damage beyond repair or a total loss of the Equipment or any item thereof, Lessee shall at Lessee's sole expense cause the affected Equipment to be restored to the condition required by the terms of the Lease.  Upon completion of such repair and after supplying CGCF with satisfactory evidence thereof (and provided no Event of Default has occurred and remains continuing), Lessee shall be entitled to receive any insurance proceeds or other recovery to which CGCF would otherwise be entitled in connection with such loss up to the amount expended by Lessee in making the repair.  CGCF shall not be obligated to undertake by litigation or otherwise the collection of any claim against any person for loss of, damage to, or government agency taking of the Equipment.  Except as expressly provided above, the total or partial destruction of any Equipment or Lessee's total or partial loss of use or possession thereof shall not release or relieve Lessee from its obligations under the Lease including the duty to pay the rent(s) therein provided.

C.   Title & Right of Inspection:  Title to the Equipment shall at all times remain in CGCF and Lessee will at all times protect and defend, at its own cost and expense, the title of CGCF from and against all claims, liens and legal processes of creditors of Lessee and keep the Equipment free and clear from all such claims, liens and processes.  The Equipment is and shall remain personal property.  CGCF shall have the right from time to time during reasonable business hours, with two (2) business days prior written notice, to enter upon Lessee's premises or elsewhere for the purpose of confirming the existence, condition and proper maintenance (including the right to review Lessee's equipment log and applicable maintenance records) of the Equipment and during any period of storage, CGCF shall also have the right to demonstrate and show the Equipment to others.  Lessee shall, upon the request of CGCF, and at its own expense firmly affix to the Equipment, in a conspicuous place, a label or metal plate as shall be supplied by CGCF showing CGCF as the owner and lessor of such Equipment.

D.   Possession, Use, Location, Maintenance and Return of Equipment:  So long as Lessee is not in default under the Lease it shall be entitled to the possession and use of the Equipment in accordance with the terms of the Schedule. The Equipment shall be used in the conduct of the lawful business of Lessee, and no item of Equipment shall be removed from its location as specifically shown on the Schedule without the prior written consent of CGCF. Lessee shall not, without CGCF's prior written consent, part with possession or control of the Equipment (except for normal maintenance provisions involving third parties) or attempt or purport to sell, pledge, mortgage, sublease or otherwise encumber any of the Equipment or otherwise dispose of or encumber any interest under the Lease. Lessee shall comply with all governmental laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Equipment. Unless otherwise set forth in the Schedule, Lessee shall be responsible for all transportation, packing, installation, testing and other charges incurred in connection with the delivery, installation and use of the Equipment. Lessee, at its expense, shall maintain the Equipment in good operating order, condition, repair and appearance, and protect the Equipment from deterioration other than normal wear and tear. Unless otherwise agreed to by CGCF in writing, Lessee shall enter into and keep in force the best standard maintenance agreement with the Supplier of the Equipment (or such other party as is acceptable to CGCF) and furnish evidence of such agreement to CGCF upon request.

In the event Lessee has elected to return the Equipment in accordance with the terms and conditions of the Lease, Lessee shall pay to CGCF an inspection, refurbishment and restocking charge of four and 25/100 percent of the Equipment Cost and Lessee shall solely bear any and all expense incurred as may be required to cause the Equipment to meet the minimum required return conditions detailed below:

1.       General Condition:  With respect to each unit of Equipment, no glass shall be broken, chipped or cracked, no upholstery shall have any cut, tear or burn, there shall be no un-repaired damage to exterior or interior materials that exceed $3,500 and all decals, numbers, customer identification, glue and adhesives shall have been removed from the Equipment without damage to paint or any other part of the Equipment.  Frame and structural members including but not limited to loader arms, sticks, booms, buckets, frame fails, all ground engaging tools and all attachments will be structurally sound, without breaks, bends, cracks or missing teeth.  Cooling, heating and lubrication systems shall not be contaminated and there shall be no leaking between systems.  No battery shall have any dead cells, cracked case or be inoperative.  All units returned will be cleaned and cosmetically acceptable, with all rust and corrosion properly removed and/or treated.  All material (i.e. dirt, refuse, asphalt, gravel, etc.) must be properly removed from the Equipment and disposed of in accordance with all applicable federal, state and local laws and regulations.  All internal fluids such as lube oil and hydraulic fluids are to be filled at operating levels and all filler caps are to be secured.

Initials          Initials

Exhibit A - Page 22

**CG COMMERCIAL FINANCE**
2211 Michelson Drive, Suite 1110, Irvine, CA 92612

**LEASE SCHEDULE No. 1** Page 4 of 4
Voice (949) 720-9511 * Facsimile (949) 720-9611

2.    Tires: All tires shall be of the same original size, type and manufacturer (or similar quality manufacturer if the original manufacturer no longer produces tires of that type) as upon delivery to Lessee. On each unit, the tires shall have no missing or damaged parts or gouges. Also, all tires shall have a minimum of fifty percent (50%) remaining wear.

3.    Mechanical Drive Train: If so equipped, the transmission / hydrostatic drive systems including but not limited to differentials, final drives, will be in good condition and operate quietly without vibrations or leaks.

4.    Electric Drive Train: If so equipped, the electric drive system including, but not limited to alternators, generators, control systems, motorized wheels shall have at least fifty percent (50%) time / wear remaining before the next overall or replacement as recommended by the manufacturer and published in standard maintenance manuals.

5.    Undercarriage: If so equipped, the undercarriage (including sprockets, links, idlers, bogies, carrier and track rollers, pins and bushings, track shoes/pads) shall have at least fifty percent (50%) time / wear remaining before the next overhaul or replacement as recommended by the manufacturer and published in standard maintenance manuals.

6.    Engine: The engine must have been maintained in accordance with manufacturer's recommendations, including overhauling the engine as required. At the time of redelivery, the engine must have at least fifty percent (50%) time remaining before the next overhaul or replacement as recommended by the manufacturer and/or published in standard maintenance manuals. Determination of satisfaction of these specifications shall be made by subjecting the Engine to standard industry testing to include (but not limited to) testing of the crankcase, manifold pressure, oil analysis and blow by tests. All tests shall be performed by a manufacturer authorized service center.

7.    Brakes: The brakes shall have at least fifty percent (50%) time remaining before the next overhaul or replacement as recommended by the manufacturer and/or published in standard maintenance manuals. No drums or other braking components shall be damaged or cracked.

8.    Booms: If so equipped, all booms shall be straight and true within Original factory specifications and tolerances. All standard rigging including sheaves, pendants, fairleads necessary for industry standard lift crane and boom trucks shall be returned with each machine.

9.    Hydraulic Equipment: All hydraulic pumps, cylinders and hoses must be fully operational at rated capacity with no leaks.

10.   Documents and Records: Each such unit shall meet and conform to all applicable federal, state and local health and safety laws and requirements, and, if applicable, have appropriate ANSI inspection certificates, permits and other certification necessary to operate the Equipment. Without limiting the foregoing, Lessee shall maintain and provide to CGCF written records of preventative maintenance and repairs kept in the ordinary course of business.

11.   Inspections: At Lessee's expense, at least twenty-one (21) days prior to, and not more than sixty (60) days prior to lease expiration, each item of Equipment must be inspected by a manufacturer's authorized maintenance representative or other qualified maintenance provider (acceptable to CGCF) to ensure the Equipment conforms to the Return Provisions outlined herein. (b) Not more than 90 days prior to the return of the Equipment, during regular working hours, Lessee must make the Equipment available to CGCF's agent so walk-around appraisals / inspections can be conducted. (c) The results of the testing and appraisal, with necessary reconditioning, documenting that the Equipment meets the return conditions required herein are to be provided to CGCF fourteen (14) days prior to the return of the Equipment.

12. Hazardous Substances: Lessee shall be responsible to return the Equipment free from contamination of any hazardous substance and shall be solely responsible for any expenses and costs associated with the clean-up thereof. For the purpose of this lease, the term "hazardous substance" shall mean and include any hazardous substance, hazardous waste, contaminant, toxic substance, and/or dangerous goods which is/are regulated under any environmental, health and/or safety law, regulation, guideline, policy, and/or by-law, or which may form the basis of liability under any such law, regulation, guideline, policy and/or by-law or common or civil law and shall include, without limitation, asbestos, polychlorinated biphenyls, urea formaldehyde, and/or flammable, explosive and radioactive substances.

E.    Taxes: **Lessee shall file all required personal property tax returns relating to the Equipment.** Lessee shall pay, and shall indemnify and hold CGCF harmless from and against, all fees, taxes, withholdings, assessments and other governmental charges, however designated, together with any penalties, fines or interest, if any, thereon, (collectively, the "Impositions") which are at any time levied or imposed against CGCF, Lessee, the Lease, the Equipment or any part thereof by any Federal, state, local or foreign government or taxing authority upon, with respect to, as a result of, or measured by (i) the Equipment (or any part thereof), or the Lease or the interest of the CGCF therein, or (ii) the purchase, ownership, delivery, leasing, possession, maintenance, use, operation, return, sale or other disposition of the Equipment or any part thereof, or (iii) the rentals, receipts or earnings payable under the Lease or otherwise arising from the Equipment or any part thereof; excluding, however, Federal, state or local taxes based on or measured by the net income of CGCF. CGCF is not responsible for contesting any valuation of, or tax imposed on, the Equipment (but may do so strictly as an accommodation to Lessee) and will not be liable or accountable to Lessee therefore. CGCF retains any and all federal and state tax credits or benefits relating to the Equipment. Lessee's obligations under this paragraph shall survive the expiration or earlier termination of this Lease.

The parties hereto intend that the Lease be treated as a lease for Federal income tax purposes, and CGCF shall be entitled to such deductions, credits and other benefits (all of which shall herein be referred to as the "Tax Benefits") with respect to the Equipment as are provided to an owner of property by the Internal Revenue Code of 1986, as amended to the date hereof (the "Code"), including without limitation any accelerated cost recovery system deductions and investment tax credit with respect to the Equipment. In the event that any of the expected Tax Benefits under any Federal, State or local law shall be lost by, recaptured, not claimed, not available for claim or disallowed to CGCF because of (i) any act or failure to act of Lessee and/or any sublessee or assignee of Lessee, (ii) any change in the legal or tax status of Lessee and/or any sublessee or assignee of Lessee, (iii) breach by Lessee of any of its representations or warranties contained in the Lease, (iv) an Event of Loss, (v) an Event of Default, (vi) the Equipment fails to qualify for 50% bonus depreciation, or (vii) any change in or amendment to tax law, congressionally, judicially, or administratively promulgated, Lessee shall promptly pay to CGCF a revised Rent Payment or lump sum amount which, in the reasonable judgment of CGCF (and after deduction of all taxes to be paid by CGCF with respect to such payment), shall have the same net after tax rate of return on a discounted cash flow basis as would have been realized by CGCF were CGCF entitled and/or able to use the expected tax deductions, credits or other benefits based on the maximum Federal Income Tax Rate applicable to CGCF, in effect during the term of the Lease. The obligation to pay such sums to CGCF shall be in addition to all other obligations of Lessee under the Lease and shall continue in full force and effect notwithstanding the termination of the Lease whether by expiration of time, by operation of law or otherwise.

Initials    Initials

Exhibit A - Page 23

Exhibit "A"
With Respect to Lease Schedule No. 1 to Lease Agreement No. CG-5687
And Related Documents

Lessee: The Monongalia County Coal Company and Murray Energy Corporation as Co-Lessees

| Supplier | Invoice Number | Invoice Date | Quantity | Serial Numbers | Equipment Description | Total Cost | Equipment Location Schedule | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Street Address | City | State | County | Zip Code |
| J.H. Fletcher & Co. | 2014029-02 | 10/2/2014 | 1 | 2014029 | New Walk-Thru CDDR-13/15 Dual Head Roof Control Drill | $ 649,028.40 | 701 Oak Forest Rd. | Brave | PA | Greene | 15316 |
| J.H. Fletcher & Co. | 2014030-02 | 10/3/2014 | 1 | 2014030 | New Walk-Thru CDDR-13/15 Dual Head Roof Control Drill | $ 649,028.40 | 701 Oak Forest Rd. | Brave | PA | Greene | 15316 |

TOTALS: $ 1,298,056.80

Plus all of the goods, furniture, fixtures, equipment and other personal property now leased by lessor to Lessee, wherever located; including all replacement parts, substitutions, additions, attachments, accessions, modifications, improvements, updates, upgrades, revisions, repairs, new versions, enhancements, accessories and the cash and non-cash proceeds thereof, and the books, records, documents, contracts, information, data and insurance proceeds related thereto or arising therefrom.

The Monongalia County Coal Company

By: _____

Name:  Robert D. Moore

Title:  Vice President

CG Commercial Finance

By: _____

Name:  Robert C. Davis

Title:  Executive Vice President

Murray Energy Corporation

By: _____

Name:  Robert D. Moore

Title:  Executive VP, CFO and COO

Page 1 of 1

Exhibit A - Page 24



**CG COMMERCIAL FINANCE**

INSIGHT. ABILITY. EXECUTION.

2211 Michelson Drive, Suite 1110, Irvine, CA 92612
voice 949-720-9511 * facsimile 949-720-9611

## DELIVERY, ACCEPTANCE AND PAYMENT AUTHORIZATION CERTIFICATE

| Lessee | | | |
|---|---|---|---|
| The Monongalia County Coal Company and Murray Energy Corporation as Co-Lessees ("Lessee") | | | |
| Street | | | |
| 46226 National Road | | | |
| City | State | County | Zip |
| St. Clairsville | OH | Belmont | 43950 |

Lessee hereby certifies that the Equipment described in Lease Schedule No. 1 dated November 7, 2014 to Lease Agreement No. CG-5687 (the "Agreement") between CG Commercial Finance ("CGCF") and the undersigned Lessee dated November 7, 2014, (collectively forming the "Lease"), has been furnished to the Lessee at the location designated in the Lease, that all of the Equipment has been completely received, installed, tested, and accepted as satisfactory by the Lessee on November 14, 2014 (the "Acceptance Date"). CGCF is irrevocably authorized to pay the supplier(s) and Lessee and billing pursuant to the Lease is appropriate.

ACCEPTED BY:

Lessee:

The Monongalia County Coal Company

By: _____

Name: Robert D. Moore

Title: Vice President

Date: 11-7-14

Lessee:

Murray Energy Corporation

By: _____

Name: Robert D. Moore

Title: Exec. V.P., C.O.O., and C.F.O.

Date: 11-7-14

Exhibit A - Page 25

## NOTICE AND ACKNOWLEDGMENT OF ASSIGNMENT

Dated November 7, 2014

CG Commercial Finance ("Assignor"), hereby gives notice that it has assigned and sold to Allegiance Portfolio Advisors, LLC ("Assignee") all of Assignor's right, title and interest in and to the assigned rental payments, and other amounts due under that Lease Agreement No. CG-5687, and Lease Schedule No. 1 (together the "Lease"), by and between Assignor and The Monongalia County Coal Company and Murray Energy Corporation as Co-Lessees ("Lessee"). All assigned rental payments and other amounts coming due pursuant to the Lease and after the date hereof are payable to and should be remitted to Assignee at the following address:

> Allegiance Portfolio Advisors, LLC
> 2935 Country Drive, Suite 102
> Little Canada, MN  55117

Lessee hereby acknowledges the effect of the assignment and agrees to deliver all assigned rental payments and other amounts coming due under the Lease in accordance with the terms thereof on or after the date of this Notice and Acknowledgment of Assignment.  Lessee acknowledges that Assignee shall have all the rights of Assignor under the Lease and all related documents, including, but not limited to, the right to issue or receive all notices and reports, to give all consents, to receive title to the equipment, to declare a default and to exercise all remedies thereunder.

Lessee agrees that, as of November 7, 2014, the following information about the Lease is true, accurate and complete:

| | |
|---|---|
| Next assigned Initial Period Rent due – | January 1, 2015 |
| Number of assigned Initial Period Rents remaining – | Thirty-Five (35) |
| Amount of each Initial Period Rent payment – | $34,011.68 |
| Frequency of Initial Period Rent payments – | Monthly |

The Lease remains in full force and effect, has not been amended and no event of default has occurred thereunder; no default exists on the part of Assignor in the performance of any of its obligations under the Lease; Lessee has no notice of a prior assignment, hypothecation or pledge of the rental payments by Assignor.

Any inquiries of Lessee related to the assigned Lease should be directed as follows:

> Allegiance Portfolio Advisors, LLC
> 2935 Country Drive, Suite 102
> Little Canada, MN  55117

All notices given by Lessee under the Lease shall be sent via Certified Mail to both Assignee at Assignee's Address and to CG Commercial Finance at 2211 Michelson Drive, Suite 1110, Irvine, CA  92612.

Assignor retains certain other rights and interests under the Lease subject to the buyout provisions of the Lease, and such rights and interests of Assignor are not extinguished by virtue of the assignment by Assignor to Assignee.

Exhibit A - Page 26

**ACKNOWLEDGED AND AGREED:**

CG Commercial Finance,
as Assignor

By:_____
       Robert C. Davis
Title:___Executive Vice President_____

Date:___11-7-14_____


Allegiance Portfolio Advisors, LLC,
as Assignee

By:_____

Title:_____

Date:_____


The Monongalia County Coal Company,
as Lessee

By:_____
       Robert D. Moore
Title:___Vice President_____

Date:___11-7-14_____


Murray Energy Corporation,
as Lessee

By:_____
       Robert D. Moore
Title:___Exec. V.P., C.O.O., and C.F.O._____

Date:___11-7-14_____

Exhibit A - Page 27

## INSURANCE CERTIFICATE REQUIREMENTS FORM

RE:  **Lessee:  The Monongalia County Coal Company and Murray Energy Corporation as Co-Lessees ("Lessee")
Lease Agreement No.  CG-5687, Lease Schedule No.  1**

CERTIFICATE CONTENTS:  Must reference all risk coverage.  The property ("Equipment") description and action must be referenced on the Insurance Certificate, as well as the Lease Number.  Insurance coverage for all items of Equipment shall include public liability, property damage liability, theft, fire, vandalism, malicious mischief, and all other risks.  A 30 day notice of cancellation is also a minimum requirement.

### LESSEE INSURANCE INFORMATION (To be completed by Lessee)

| | | |
|---|---|---|
| Agent's Name: _____ | Insurance Company: | _____ |
| Agent's Address: _____ | Policy No.: | _____ |
| _____ | Expiration Date: | _____ |
| Agent's Phone No: _____ | Amt. of Coverage: | _____ |
| Agent's Fax No: _____ | | |
| Agent's Email: _____ | | |

### PLEASE ISSUE SEPARATE CERTIFICATES TO EACH COMPANY BELOW
(REQUIRED INSURANCE CERTIFICATE FORMAT)

| **LOSS PAYEE:** | CG Commercial Finance<br>2211 Michelson Drive, Suite 1110<br>Irvine, CA 92612<br>Attn: Debra Variano | Allegiance Portfolio Advisors, LLC<br>2935 Country Drive, Suite 102<br>Little Canada, MN 55117 |
|---|---|---|
| **ADDITIONAL INSURED:** | CG Commercial Finance<br>2211 Michelson Drive, Suite 1110<br>Irvine, CA 92612<br>Attn: Debra Variano | Allegiance Portfolio Advisors, LLC<br>2935 Country Drive, Suite 102<br>Little Canada, MN 55117 |
| **REQUIRED NOTICE OF CANCELLATION:<br>(30 DAY NOTICE)** | CG Commercial Finance<br>2211 Michelson Drive, Suite 1110<br>Irvine, CA 92612<br>Attn: Debra Variano | Allegiance Portfolio Advisors, LLC<br>2935 Country Drive, Suite 102<br>Little Canada, MN 55117 |

Exhibit A - Page 28

**PAY PROCEEDS LETTER / DISBURSEMENT AUTHORIZATION**

Allegiance Portfolio Advisors, LLC
2935 Country Drive, Suite 102
Little Canada, MN 55117

Date: November 7, 2014

Gentlemen:

In connection with the certain Assignment and Bill of Sale (CG-5687-1) between Allegiance Portfolio Advisors, LLC ("Purchaser") and Consultants Group Commercial Funding Corporation dba CG Commercial Finance and as Passchendaele Capital Fund ("Seller"), (the "Purchase Agreement"), Seller hereby authorizes and directs Purchaser to pay for the equipment, covered under the above referenced Schedule, by WIRE TRANSFER as follows:

| **Destination Information:** | **J.H. Fletcher & Co.** |
| --- | --- |
| Bank Name | J.P. Morgan Chase |
| Bank ABA Number | 021 000 021 |
| Account Number | 800 062 022 |
| Account Name | J.H. Fletcher & Co. |
| Attention | |
| Dollar Value | $649,028.40 |
| Reference | Inv.# 2014029-02 and 2014030-02 |
| Contact Name | |
| Contact Phone Number | |

| **Destination Information:** | **The Monongalia County Coal Company** |
| --- | --- |
| Bank Name | Fifth Third Bank |
| Bank ABA Number | 042-000-314 |
| Account Number | 7523720451 |
| Account Name | The Monongalia County Coal Company |
| Attention | |
| Dollar Value | $649,028.40 |
| Reference | CG-5687-1 |
| Contact Name | Eric Welsch |
| Contact Phone Number | 216-274-5793 |

Lessee acknowledges delivery, acceptance and good working order of all the Equipment. Lessee warrants that payment to the persons of the amounts described above constitutes full and final payment to all persons necessary so that the Equipment is fully paid for and shall be owned by Lessor free of all liens and encumbrances.

| | | | | |
| --- | --- | --- | --- | --- |
| Lessee: | The Monongalia County Coal Company | | Lessee: | Murray Energy Corporation |
| By: | *[signature]* | | By: | *[signature]* |
| Name: | Robert D. Moore | | Name: | Robert D. Moore |
| Title: | Vice President | | Title: | Exec. V.P., C.O.O., and C.F.O. |
| Date: | 11-7-14 | | Date: | 11-7-14 |

Consultants Group Commercial Funding Corporation
dba CG Commercial Finance and as Passchendaele Capital
Fund

By:_____
Name:___Robert C. Davis_____
Title:___Executive Vice President_____
Date:___11-7-14_____

Exhibit A - Page 29



2211 Michelson Drive
Suite 1110
Irvine, CA 92612

Toll Free: 800.303.4006
www.cgcommercial.com
info@cgcommercial.com

INSIGHT. ABILITY. EXECUTION.

Re:     Lease Agreement No. CG-5687
        Lease Schedule No. 1

## LESSEE ESTOPPEL CERTIFICATE

Lessee hereby affirms and acknowledges that Lessee:

1    has read and understood the meaning of each of the provisions in Lease Agreement No. CG-5687, Lease Schedule No. 1 to Lease Agreement No. CG-5687 and any other documents expressly made a part of the Lease by written reference therein (which collectively constitute the "Lease") as well as all other documents submitted by CGCF to Lessee in connection therewith.

2    has either reviewed the Lease with its counsel or having had the opportunity to do so, has elected not to review the Lease with counsel of its own choosing.

3    understands that CGCF has relied on the written provisions of the Lease in deciding to enter into the Lease and that the written provisions of the Lease were a material inducement for CGCF's acceptance of the Lease.

4    represents and recognizes that no oral statements have been made or relied upon that conflict with or otherwise contradict the provisions of the Lease.

IN WITNESS WHEREOF, this Certificate has been signed as of the date set forth below.

Lessee:   The Monongalia County Coal Company

By

Name:     Robert D. Moore

Title:    Vice President

Date:     11-7-14

Lessee:   Murray Energy Corporation

By:

Name:     Robert D. Moore

Title:    Exec. V.P., C.O.O., and C.F.O.

Date:     11-7-14

Exhibit A - Page 30

# EXHIBIT B



**MURRAY ENERGY CORPORATION**

Murray Energy Corporation
46226 National Road
St. Clairsville, OH 43950
PHONE: (740) 338-3100
FAX: (740) 338-3405

February 24, 2017

*Sent via Certified Mail and E-Mail:*

Allegiance Portfolio Advisers, LLC
2935 Country Drive, Suite 102
Little Canada, MN 55117

CG Commercial Finance
2211 Michelson Drive, Suite 1110
Irvine, CA 92612

**RE:**   *Murray Energy Corporation, The Monongalia County Coal Company, and CG Commercial Finance Lease Agreement CG-5687, Lease Schedule No. 1 Notice of Exercise of Purchase Option*

Dear Sir or Madam,

Reference is hereby made to that Lease Agreement No. CG-5687, dated November 7, 2014 and Lease Schedule No. 1, dated November 7, 2014 (the "Schedule") (collectively, the "Lease"), all by and between Murray Energy Corporation and The Monongalia County Coal Company (collectively, the "Lessee"), and CG Commercial Finance.  In accordance with the Lease, this letter shall serve as Lessee's written notice that it will exercise Schedule Option (2) at the end of the Initial Period. Specifically, Lessee shall purchase all of the leased equipment described in Exhibit A of the Schedule, a copy of which is attached to this letter.

Please contact Anthony Vcelka at (740) 338-3129, avcelka@coalsource.com, or Brent Hutcheson at (740) 338-3249, brenthutcheson@coalsource.com with any questions.

Sincerely,

MURRAY ENERGY CORPORATION

Robert D. Moore
Executive VP, COO, and CFO

THE MONONGALIA COUNTY COAL COMPANY

Robert D. Moore
Vice President

Cc:    John Seibel, john.seibel@AFG2000.com
       Shelly Anderson, shelly.anderson@AFG2000.com
       Scott McCullum, Scott.mccullum@cgcommercial.com
       Robert Davis, Robert.Davis@cgcommercial.com

Exhibit B - Page 31

Exhibit "A"
With Respect to Lease Schedule No. 1 to Lease Agreement No. CG-5687
And Related Documents

Lessee: The Monongalia County Coal Company and Murray Energy Corporation as Co-Lessees

| Supplier | Invoice Number | Invoice Date | Quantity | Serial Numbers | Equipment Description | Total Cost | Equipment Location Schedule | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Street Address | City | State | County | Zip Code |
| J.H. Fletcher & Co. | 2014029-02 | 10/2/2014 | 1 | 2014029 | New Walk-Thru CDDR-13/15 Dual Head Roof Control Drill | $ 649,028.40 | 701 Oak Forest Rd. | Brave | PA | Greene | 15316 |
| J.H. Fletcher & Co. | 2014030-02 | 10/3/2014 | 1 | 2014030 | New Walk-Thru CDDR-13/15 Dual Head Roof Control Drill | $ 649,028.40 | 701 Oak Forest Rd. | Brave | PA | Greene | 15316 |

TOTALS: $ 1,298,056.80

Plus all of the goods, furniture, fixtures, equipment and other personal property now leased by lessor to Lessee, wherever located, including all replacement parts, substitutions, additions, attachments, accessions, modifications, improvements, updates, upgrades, revisions, repairs, new versions, enhancements, accessories and the cash and non-cash proceeds thereof, and the books, records, documents, contracts, information, data and insurance proceeds related thereto or arising therefrom.

The Monongalia County Coal Company

By: _____

Name: Robert D. Moore

Title: Vice President

Murray Energy Corporation

By: _____

Name: Robert D. Moore

Title: Executive VP, CFO and COO

CG Commercial Finance

By: _____

Name: Robert C. Davis

Title: Executive Vice President

Page 1 of 1

Exhibit B - Page 32

# EXHIBIT C

Email:   Lindsey.Freund@afg2000.com
*www.afg2000.com*

---

**From:** Hutcheson, Brent [mailto:BrentHutcheson@coalsource.com]
**Sent:** Thursday, November 16, 2017 9:35 AM
**To:** Lindsey Freund <lindsey.freund@AFG2000.com>
**Subject:** RE: AFG INVOICE

Hi Lindsey –

What is the non-taxable amount being split out on this invoice?

Thanks,
Brent

---

**From:** Lindsey Freund [mailto:lindsey.freund@AFG2000.com]
**Sent:** Monday, November 13, 2017 4:19 PM
**To:** Hutcheson, Brent <BrentHutcheson@coalsource.com>; mec lease <meclease@coalsource.com>
**Subject:** AFG INVOICE

Please see attached invoice.

Thanks,

**Lindsey Freund**
*Accountant*



Phone: (651) 294-4550
Fax :    (651) 294-4564
Email:   Lindsey.Freund@afg2000.com
*www.afg2000.com*

2

Exhibit C - Page 33

# EXHIBIT D

**From:** Tobin Junowich
**Sent:** Tuesday, November 28, 2017 4:07 PM
**To:** 'Hutcheson, Brent' <BrentHutcheson@coalsource.com>
**Cc:** Sharif Ahmed <sharif.ahmed@CGCommercial.Com>
**Subject:** FW: Invoice # 39526 for December for lease number 001-005687-001 The Monongalia Coal Company

Hi Brent,

See below from AFG, please let me know a good time to huddle back up tonight or tomorrow am.

Thanks!

Sincerely,
**CG Commercial Finance**

**Tobin Junowich**
voice   800.303.4006  ext. 307
voice   949.720.9511
cell    949.375.1503

**From:** Shelly Anderson [mailto:shelly.anderson@AFG2000.com]
**Sent:** Tuesday, November 28, 2017 2:47 PM
**To:** Barack, Cory <CoryBarack@coalsource.com>
**Cc:** John Seibel <John.Seibel@AFG2000.com>
**Subject:** Invoice # 39526 for December for lease number 001-005687-001 The Monongalia Coal Company

Cory

1

Please disregard the attached invoice. I understand this lease is an FMV lease and you are currently negotiating that amount with CG Commercial Finance.

Sorry for the confusion,

Best Regards,
Shelly


**Shelly Anderson, EA**
*Chief Financial Officer*



Allegiance Financial Group, Inc.

*Allegiance Financial Group, Inc   2935 Country Dr Ste 102 Little Canada, MN 55117*

Phone: (651) 294-4543
Cell:    (763)222-6194
Fax :   (651) 294-4560
Email:   shelly.anderson@afg2000.com
*www.afg2000.com*


**From:** Services
**Sent:** Tuesday, November 28, 2017 10:01 AM
**To:** Shelly Anderson <shelly.anderson@AFG2000.com>
**Subject:** Message from KM_C454e

*Notice to Recipient: This email is meant for only the intended recipient and the information may be privileged and proprietary. It may be a communication privileged by law and any inadvertent transmission error shall not be deemed a waiver or loss of such privilege. If you receive this message in error, any review, use, dissemination, distribution or reproduction of this email is strictly prohibited. Please immediately notify us of the error by return email, delete the original and any duplicates of the email, and destroy any hard copies thereof. CG Commercial Finance (CGCF) reserves the right to monitor all email communications on its network to the fullest extent of the law. The information provided for in this email or in any attachments hereto is not intended to be and should not be construed as accounting, tax, auditing, or legal advice, or a contract of any kind or nature. This email shall not be construed as a credit or financing approval or offer between CGCF and any other party. Any such credit or financing approvals or offers are only valid if provided in a writing signed by a duly authorized CGCF credit officer. By transmitting or otherwise disseminating this email, CGCF does not intend to agree, bind or otherwise consent to any offer, proposal or any other matter for any purpose whatsoever, and does not intend this email to constitute an electronic signature pursuant to any state or federal law that authorizes the use of electronic signatures. This email does not modify, supersede, alter or otherwise affect any written agreement with CGCF, as any such changes may only be made through a writing signed by a duly authorized officer of CGCF. Message transmission is not guaranteed to be secure.*

*Notice to Recipient: This email is meant for only the intended recipient and the information may be privileged and proprietary. It may be a communication privileged by law and any inadvertent transmission error shall not be deemed a waiver or loss of such privilege. If you receive this message in error, any review, use, dissemination, distribution or reproduction of this email is strictly prohibited.*

*Please immediately notify us of the error by return email, delete the original and any duplicates of the email, and destroy any hard copies thereof. CG Commercial Finance (CGCF) reserves the right to monitor all email communications on its network to the fullest extent of the law. The information provided for in this email or in any attachments hereto is not intended to be and should not be construed as accounting, tax, auditing, or legal advice, or a contract of any kind or nature. This email shall not be construed as a credit or financing approval or offer between CGCF and any other party. Any such credit or financing approvals or offers are only valid if provided in a writing signed by a duly authorized CGCF credit officer. By transmitting or otherwise disseminating this email, CGCF does not intend to agree, bind or otherwise consent to any offer, proposal or any other matter for any purpose whatsoever, and does not intend this email to constitute an electronic signature pursuant to any state or federal law that authorizes the use of electronic signatures. This email does not modify, supersede, alter or otherwise affect any written agreement with CGCF, as any such changes may only be made through a writing signed by a duly authorized officer of CGCF. Message transmission is not guaranteed to be secure.*

3

Exhibit D - Page 36

ALLEGIANCE CAPITAL LLC
PO BOX 9305
KB 55
MINNEAPOLIS, MN   55440-9305
651-294-4550



**AFG**
Allegiance Financial Group, Inc.

*INVOICE*

ATTN:                                                    DATE OF INVOICE: 11/09/2017
THE MONONGALIA COUNTY COAL COMPANY AND   INVOICE NUMBER: 39526
46226 NATIONAL ROAD
SAINT CLAIRSVILLE, OH   43950

| CONTRACT NO. | DESCRIPTION | TAXABLE AMT | NON-TAXABLE | SALES/USE TAX | LATE CHARGES | TOTAL DUE |
|---|---|---|---|---|---|---|
| 001 0005687-001 | (2) NEW WALK THROUGH DATE DUE 12/01/17 | | 99,858.15 | | | 299,858.15 |

*IF THERE IS A CHANGE IN INVOICING ADDRESS OR EQUIPMENT LOCATION PLEASE CONTACT US IMMEDIATELY AT 1-651-294-4550 OR FAX THE INFORMATION TO 1-651-294-4551. If you have paid some or all of these charges, please send only the remaining balance owed.*

**Total Due ➡** 299,858.15

CONTRACT NO.                                              TOTAL DUE

INVOICE #: 39526      001-0005687-001
                      DATE DUE 12/01/17          299,858.15

ALLEGIANCE CAPITAL LLC
PO BOX 9305
KB 55
MINNEAPOLIS, MN  55440-9305
651-294-4550

THE MONONGALIA COUNTY COAL COM
46226 NATIONAL ROAD
SAINT CLAIRSVILLE, OH   43950

RETURN BOTTOM PORTION WITH YOUR PAYMENT

TOTAL DUE    299,858.15

Exhibit D - Page 37